**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| **JASON SMITH**<br>750 South 3rd Street<br>Tipp City, Ohio 45371,<br><br>   Plaintiff,<br><br>  v.<br><br>**PENNYMAC LOAN SERVICES, LLC**<br>c/o CT Corporation System, Statutory Agent<br>4400 Easton Commons Way, Suite 125<br>Columbus, Ohio 43219,<br><br>   Defendant. | **CASE NO.**<br><br>**JUDGE**<br><br><br>**JURY DEMAND ENDORSED HEREIN** |

**COMPLAINT FOR MONEY DAMAGES AND OTHER RELIEF**

  The following allegations are based upon Plaintiff Jason Smith's (hereinafter, "Mr. Smith" or "Plaintiff") personal knowledge, the investigation of counsel, and information and belief. Mr. Smith, through undersigned counsel, alleges as follows:

**INTRODUCTION**

1. Defendant PennyMac Loan Services, LLC (hereinafter, "PennyMac" or "Defendant") failed to pay a premium for the hazard insurance policy on Mr. Smith's home in 2022 and Mr. Smith's hazard insurance was canceled as a result. Mr. Smith's home later suffered water damage but because of PennyMac's failure to make the proper premium payment, there was no hazard insurance policy in place at the time of the damage. Mr. Smith sent PennyMac a Qualified Written Request (hereinafter, the "QWR") to inquire into the lapse in his hazard insurance policy. PennyMac failed to properly respond to the QWR, which required Mr. Smith to send a second QWR. PennyMac's response to Mr. Smith's second

QWR revealed PennyMac's failure to pay the hazard insurance premium and further violations of the Real Estate Settlement Procedures Act (hereinafter, the "RESPA").

## PRELIMINARY STATEMENT

2. Mr. Smith institutes this action for actual damages, statutory damages, attorney fees, and the costs of this action against PennyMac for violations of RESPA, 12 U.S.C. § 2601, *et seq.* and Regulation X, 12 C.F.R. § 1024, as well as a claim against PennyMac for breach of contract.

## JURISDICTION

3. This Court has subject matter jurisdiction over Counts One and Two under RESPA at 12 U.S.C. § 2614, and 28 U.S.C. §§ 1331 and 1337.

4. This Court has subject matter jurisdiction over Count Three under 28 U.S.C. § 1332.

5. This Court has personal jurisdiction over PennyMac because PennyMac transacts business within this District, the loan at issue was incurred within this District, and the property which was the subject of the loan at issue is located within this District. *International Shoe v. Washington*, 326 U.S. 310 (1945).

6. Venue is proper in accordance with 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and the property is located in this judicial district.

## PARTIES

7. Mr. Smith is a natural person currently residing within this Court's jurisdiction at 750 South 3rd Street, Tipp City, Ohio 45371.

8. At all relevant times, Mr. Smith was and is a "person" within the meaning of the RESPA at 12 U.S.C. § 2602(5).

9. At all relevant times, Mr. Smith was and is a "borrower" within the meaning of RESPA.

10. PennyMac is a company organized under the laws of the United States of America with its principal place of business in Delaware.

11. At all relevant times, PennyMac was and is a "person" within the meaning of RESPA at 12 U.S.C. § 2602(5).

12. At all relevant times, PennyMac was and is a loan "servicer" of Mr. Smith's "federally related mortgage loan" within the meaning of those terms in RESPA respectfully at 12 U.S.C. §§ 2605(i)(2) and 2602(1).

## FACTUAL ALLEGATIONS

13. Mr. Smith incorporates all other paragraphs in this Complaint by reference as though fully written here.

14. Each action or inaction alleged herein against PennyMac is also an allegation of action or inaction by PennyMac's agents, predecessors, successors, employees, contractors, assignees, assignors, and servicers, as appropriate.

15. On or about March 13, 2020, Mr. Smith financed the residential real property located at 750 South 3rd Street, Tipp City, Ohio 45371 with a note secured by a mortgage (hereinafter, the "Note") (hereinafter, the "Mortgage") (collectively the "Mortgage Loan"). A copy of the Note and Mortgage are attached hereto as **Exhibit A** and **Exhibit B**.

16. The Mortgage Loan was and is a federally related mortgage loan within the meaning of RESPA at 12 U.S.C. §§ 2605(i)(2) and 2602(1).

17. On or about March 23, 2020, Mr. Smith received a notice of servicing transfer of the Mortgage Loan from West Penn to PennyMac.

18. PennyMac is the current owner of the Mortgage Loan.

19. PennyMac is the current mortgage servicer of the Mortgage Loan.

20. PennyMac and Mr. Smith entered into an agreement concerning insurance payments.

21. PennyMac instructed Mr. Smith to make payments into his escrow account.

22. PennyMac paid for Mr. Smith's hazard insurance policy from his escrow account.

23. Mr. Smith made timely deposits into his escrow account every month.

24. Mr. Smith's hazard insurance payment for 2022 was due in March of 2022.

25. In or around January of 2022, PennyMac issued two hazard insurance payments to Mr. Smith's insurance company Hippo Insurance Services (hereinafter, "Hippo").

26. The first payment was for Two Thousand Seven Hundred Eighty-Three Dollars ($2,783.00) (hereinafter, the "First Payment") and the second payment was for One Thousand Seven Hundred Fifty Dollars ($1,750.00) (hereinafter, the "Second Payment").

27. However, PennyMac canceled the First Payment, which was the premium needed for Mr. Smith's hazard insurance policy in 2022.

28. On or about April 14, 2022, PennyMac received notice from Hippo that it would cancel Mr. Smith's hazard insurance policy on April 18, 2022 for insufficient payment of the premium.

29. PennyMac then assumed that because it made the Second Payment, no further action was needed. PennyMac was wrong.

30. As a direct and proximate result of PennyMac's failure to make the proper March of 2022 hazard insurance payment, Hippo canceled Mr. Smith's policy in April of 2022. See attached **Exhibit C**.

31. Mr. Smith's home later suffered water damage, but he was unable to receive compensation for this damage due to his hazard insurance policy being cancelled.

32. PennyMac then put a Force Place Insurance policy (hereinafter, "FPI") on Mr. Smith's home after the Hippo policy was canceled due to PennyMac's nonpayment of the March of 2022 premium, which then increased Mr. Smith's monthly payment on the Mortgage Loan.

33. Out of options, Mr. Smith retained counsel to send a QWR pursuant to RESPA.

34. On or around July 6, 2023, Mr. Smith, through counsel, sent a QWR (hereinafter, the "First QWR") containing Notice of Error and requesting certain information. A true and accurate copy of the First QWR is attached hereto as **Exhibit D**.

35. The First QWR officially notified PennyMac of errors related to the Mortgage Loan, including but not limited to, failing to properly account the escrow balance and adding other improper fees and charges to the Mortgage Loan.

36. The QWR also requested PennyMac provide information, including but not limited to, the following:

    a. All documents from January of 2021 to the present related to the Mortgage Loan, including but limited to all agreements, offers, internal notes, emails, and communications regarding the same;

    b. The current physical location of the Note;

    c. A copy of the security instrument that establishes the lien securing the Mortgage Loan;

    d. All telephone call logs, recording, and servicer notes regarding communications with Mr. Smith from March of 2021 to present;

  e. All correspondence provided to Mr. Smith from January of 2021 to present;

  f. A full accounting of all fees charged to Mr. Smith's account, including when each fee was charged, the nature of each fee charged, and why each fee was charged; and

  g. A key to identify the credits, fees and charges to Mr. Smith's account.

37. On or about July 21, 2023, PennyMac responded to the First QWR.

38. PennyMac failed to address the Notice of Error.

39. PennyMac failed to explain why Mr. Smith's hazard insurance was dropped.

40. PennyMac failed to provide any explanation of what it did to review or correct any information.

41. PennyMac failed to adequately explain the fees and charges to Mr. Smith's account.

42. PennyMac failed to provide a key to identify the credits, fees and charges to Mr. Smith's account.

43. PennyMac failed to produce all documents and communications regarding the Mortgage Loan, including, but not limited to, communications and documents regarding the COVID forbearance plan that Mr. Smith participated in or the Patrial Claim Mortgage that PennyMac processed for Mr. Smith in 2022.

44. The documents PennyMac produced in response to the First QWR evidence PennyMac's failure to make the required hazard insurance premium payment on the Mortgage Loan for March of 2022, however, PennyMac did not explain this error.

45. Because PennyMac's response to the First QWR was deficient, Mr. Smith was forced to send a second QWR to PennyMac, on or about January 31, 2024 (hereinafter, the "Second QWR").

46. The Second QWR asked PennyMac to explain its error in failing to pay the hazard insurance premium and further requested that PennyMac explain the new "Reserve" and "Shortage" fees on Mr. Smith's account.

47. The Second QWR also asked PennyMac to produce documents and information, including, but not limited to, all documents and communications related to any refused, returned, or refunded hazard insurance payments.

48. In response to the Second QWR, PennyMac produced a letter it sent to Mr. Smith on April 21, 2023 (hereinafter, the "April 2023 Letter"). A true and accurate copy of the April 2023 Letter is attached hereto as **Exhibit E**.

49. The April 2023 Letter explained that PennyMac failed to properly pay the hazard insurance premium in March of 2022 resulting in Mr. Smith's hazard insurance coverage being dropped.

50. PennyMac did not produce the April 2023 Letter in response to the First QWR despite the request therein for PennyMac to produce all correspondence it sent to Mr. Smith from January 1, 2021 to the present.

51. PennyMac also produced letters in response to the Second QWR that were sent to Mr. Smith regarding the FPI that were not produced in response to the First QWR.

52. PennyMac also produced call logs in response to the Second QWR that it did not produce in response to the First QWR despite the request therein for PennyMac to produce all telephone call logs, recording, and servicer notes regarding communications with Mr. Smith from March of 2021 to present.

53. PennyMac's response to the Second QWR also revealed errors in accounting related to Mr. Smith's escrow account.

54. As a direct and proximate result of PennyMac's actions, Mr. Smith incurred legal fees and costs associated with preparing and mailing the First QWR and the Second QWR, which are separate and apart from the attorney fees incurred in bringing this lawsuit.

55. As a result of PennyMac's actions, Mr. Smith suffered severe emotional distress, including anxiety, stress, and sleepless nights.

56. As a result of PennyMac's actions, Mr. Smith incurred the legal fees and expenses of bringing this lawsuit.

57. As a result of PennyMac's actions, Mr. Smith incurred actual damages, including, but not limited to, damage to his home that was not covered by the cancelled hazard insurance policy.

## FIRST COUNT – RESPA QWR VIOLATIONS

58. Mr. Smith incorporates all other paragraphs in this Complaint by reference as though fully written here.

59. PennyMac's actions described in this Complaint constitute violations of RESPA, 12 U.S.C. § 1601, *et seq.*, and Regulation X, and 12 C.F.R. § 1024, *et seq*.

60. The QWR is a "qualified written request" as that term is defined in 12 U.S.C. § 2605(e)(1)(B).

61. By failing to adequately respond to the First QWR, PennyMac violated RESPA, including pursuant to 12 U.S.C. § 2605(e)(2) and 12 C.F.R. 1024.36.

62. By failing to provide Mr. Smith with the information he requested in the First QWR, PennyMac violated Regulation X, including pursuant to 12 C.F.R. 1024.36.

63. By failing to conduct a reasonable investigation into the errors noted by Mr. Smith, PennyMac violated Regulation X, including pursuant to 12 C.F.R. 1024.26(d).

64. By failing to adequately respond to Mr. Smith's noted errors, PennyMac violated Regulation X, including pursuant to 12 C.F.R. 1024.35(a).

65. By failing to adequately respond to Mr. Smith's noted errors in the First QWR, PennyMac violated Regulation X, including pursuant to 12 C.F.R. 1024.35(b).

66. By failing to correct the errors, PennyMac violated Regulation X, including pursuant to 12 C.F.R. 1024.36.

67. PennyMac regularly fails to evaluate and properly respond to QWRs and Notices of Error in compliance with RESPA and Regulation X.

68. PennyMac has engaged in a pattern or practice of non-compliance with the requirements of RESPA and Regulation X.

69. As a result of PennyMac's actions, Mr. Smith incurred actual damages, including but not limited to, costs associated with preparing and sending the QWRs and bringing this action, improper fees assessed on the account, and loss of credit.

70. As a result of PennyMac's actions, Mr. Smith suffered severe emotional distress, including anxiety, embarrassment, damage to reputation, stress, and sleepless nights.

71. Due to these violations, PennyMac is liable to Mr. Smith for actual damages to be determined at trial, additional damages in the amount of at least Two Thousand Dollars ($2,000.00), plus attorney fees, and costs of the action, including pursuant to 12 U.S.C. § 2605(f).

**SECOND COUNT – VIOLATION OF THE PROMPT PAYMENT RULE**

72. Mr. Smith incorporates all other paragraphs in this Complaint by reference as though fully written here.

73. The terms of the Mortgage Loan require Mr. Smith to make payments to PennyMac that are deposited into an escrow account to pay taxes, insurance premiums, and other charges for the Mr. Smith's home including payment of hazard insurance.

74. Mr. Smith made timely payments into his escrow account.

75. PennyMac failed to make payments from Mr. Smith's escrow account for his hazard insurance policy in a timely manner in violation of 12 C.F.R. 1024.34(a) and 12 U.S.C. § 2605(g).

76. PennyMac's failure to make timely hazard insurance policy payments further violated 12 C.F.R. 1024.17(k)(1)(5).

77. As a result of PennyMac's failure to make timely hazard insurance policy payments, Mr. Smith's hazard insurance policy was canceled.

78. As a result of PennyMac's actions, Mr. Smith incurred actual damages, including but not limited to, costs associated with damage caused to his home that was not covered by his cancelled hazard insurance policy.

79. As a result of PennyMac's actions, Mr. Smith suffered severe emotional distress, including anxiety, embarrassment, damage to reputation, stress, and sleepless nights.

80. Due to the above violations, PennyMac is liable to Mr. Smith for actual damages to be determined at trial, additional damages in the amount of at least Two Thousand Dollars ($2,000.00), plus attorney fees, and costs of the action, including pursuant to 12 U.S.C. § 2605(f).

## THIRD COUNT – BREACH OF CONTRACT

81. Mr. Smith incorporates all other paragraphs in this Complaint by reference as though fully written here.

82. The Mortgage Loan is a valid and enforceable contract between Mr. Smith and PennyMac.

83. Mr. Smith complied with all material terms of the Mortgage Loan.

84. PennyMac assumed West Penn's rights and obligations under the Mortgage Loan.

85. PennyMac had a duty under the Mortgage Loan to make hazard insurance policy payments.

86. Mr. Smith satisfied all conditions precedent, if any.

87. PennyMac failed to make the hazard insurance premium payment in March of 2022.

88. PennyMac breached the agreement with Mr. Smith when it failed to pay the hazard insurance premium.

89. PennyMac was required to pay hazard insurance under the Mortgage Loan.

90. As a result of PennyMac's breach of contract, Mr. Smith has been damaged by his hazard insurance getting dropped.

91. As a result of PennyMac's breach of contract, Mr. Smith has been damaged in an amount to be determined at trial in excess of Twenty-Five Thousand Dollars ($25,000.00).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Court:

   a. Assume jurisdiction of this case;

   b. Grant judgment in favor of Plaintiff on all Counts and for the remedies sought in each Count;

   c. Award Plaintiff maximum damages on the Counts, including the maximum statutory damages available, the maximum economic and non-economic damages available, including actual, emotional, general, punitive, and other damages;

    d.    Award Plaintiff actual damages to be established at trial including pursuant to 12 U.S.C. § 2605(f);

    e.    Award Plaintiff statutory damages in the amount of at least Two Thousand Dollars ($2,000.00), plus attorney fees, and costs of the action, including pursuant to 12 U.S.C. § 2605(f);

    f.    Award Plaintiff additional damages and costs;

    g.    Issue a judicial determination of the rights and obligations of the parties; and

    h.    Award such other relief as the court deems appropriate.

Dated: April 18, 2024.    Respectfully Submitted,

KOHL & COOK LAW FIRM, LLC

*/s/ Jacob R. Dattilo*
Jacob R. Dattilo (0102328)
Timothy J. Cook (0093538)
Andrew J. Gerling (0087605)
1900 Bethel Rd.
Columbus, OH 43220
(614) 763-5113 PH
(937) 813-6057 FAX
jacob@kohlcook.com
timothy@kohlcook.com
sean@kohlcook.com
*Attorneys for Plaintiff*

## **JURY TRIAL DEMANDED**

Plaintiff respectfully requests a jury trial on all triable issues.

*/s/ Jacob R. Dattilo*
Jacob R. Dattilo (0102328)
*Attorneys for Plaintiff*