THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

JASON SMITH,                          :

    Plaintiff,                        :       Case No. 3:24-cv-116

                              :

    v.                                :       Judge Walter H. Rice
                                  Mag. Judge Peter B. Silvain, Jr.

PENNYMAC LOAN SERVS., LLC,             :

    Defendant.                        :

---

ORDER OVERRULING MOTION TO STRIKE OF PLAINTIFF JASON SMITH (DOC.
#14) AND OVERRULING AS TO CLAIM ONE AND SUSTAINING AS TO CLAIMS
TWO AND THREE MOTION FOR JUDGMENT ON THE PLEADINGS OF DEFENDANT
PENNYMAC LOAN SERVICES, LLC (DOC. #12); CLAIMS TWO AND THREE FROM
PLAINTIFF'S COMPLAINT (DOC. #1) ARE DISMISSED WITHOUT PREJUDICE TO
REFILING WITHIN TWENTY-EIGHT (28) DAYS OF ENTRY

---

       This case is before the Court on Defendant PennyMac Loan Services, LLC's

("PennyMac" or "PLS") Motion for Judgment on the Pleadings. ("Rule 12(c)

Motion," Doc. #12). Plaintiff Jason Smith has also moved to strike the

declarations of Johnny Morton and Robert T. Lieber, Jr., PennyMac's counsel,

which were attached to the Rule 12(c) Motion. ("Motion to Strike," Doc. #14,

citing J. Morton Decls., Docs. #12-1, 12-2; R. Lieber Decl., Doc. #12-5). For the

reasons set forth below, Plaintiff's Motion to Strike is OVERRULED and

Defendant's Rule 12(c) Motion is SUSTAINED IN PART and OVERRULED IN PART.

I.    **Factual Background and Procedural History**

A.    **Rule 12(c) Motion**

As PennyMac's Motion arises under Rule 12, the Court treats as true all well-pleaded factual allegations in the Complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff Jason Smith purchased residential real property on or about March 13, 2020; ten days later, PennyMac assumed the servicing of his mortgage. (Compl., Doc. #1, PAGEID 3, ¶¶ 15, 17). In January 2022, PennyMac made two payments out of Plaintiff's escrow account to his insurer, Hippo Insurance Services ("Hippo"), but canceled one of the payments. (*Id.* at PAGEID 4, ¶¶ 25-27). Hippo canceled Plaintiff's policy for non-payment in April 2022. (*Id.* at ¶ 30). Plaintiff's house subsequently suffered water damage, for which he was unable to receive payment from an insurer, and PennyMac put a "Forced Place Insurance" ("FPI") policy on the property, which raised his rates. (*Id.* at PAGEID 5, ¶¶ 31-32).

Plaintiff made an initial qualified written request ("First QWR") to PennyMac, seeking information "including but not limited to, failing to properly account the escrow balance and adding other improper fees and charges to the Mortgage Loan." (Doc. #1, PAGEID 5, ¶ 35). He claims that PennyMac failed to address the matters raised in the First QWR; specifically, PennyMac failed to explain why it canceled the first escrow payment and failing to producing documents related to the COVID forbearance plan into which Plaintiff had entered in early 2022. (*Id.* at PAGEID 6, ¶¶ 38-39, 43-44). Plaintiff made a Second QWR, to which PennyMac responded by turning over numerous documents that had not previously been

2

disclosed, despite being requested in the First QWR. Those documents included: a letter in which PennyMac purportedly conceded that its cancellation of the escrow payment resulted in Hippo canceling Plaintiff's policy, and accounting records, which revealed significant errors with respect to Plaintiff's escrow account. (*Id.* at PAGEID 7, ¶¶ 49, 53). In Claim One, Plaintiff alleges that PennyMac's actions and inactions violated the Real Estate Settlement Procedures Act of 1974 ("RESPA") and the Consumer Financial Protection Bureau's ("CFPB") Regulation X. (*Id* at PAGEID 8-9, ¶¶ 58-71, citing 12 U.S.C. § 2605(e); 12 C.F.R. §§ 1024.35-36). In Claim Two, Plaintiff alleges that PennyMac violated its RESPA obligations as to Plaintiff's escrow account and Regulation X's "Prompt Payment Rule." (*Id.* at PAGEID 9-10, ¶¶ 72-80, citing 12 U.S.C. § 2605(f-g); 12 C.F.R. § 1024.34(a)). In Claim Three, Plaintiff alleges that PennyMac's failure to make proper escrow payments constituted common law breach of contract. (*Id.* at PAGEID 10-11, ¶¶ 81-91).

In the Rule 12(c) Motion, PennyMac argues that Claim One fails "because, despite Plaintiff's allegation that PLS failed to properly respond to the First QWR, the First QWR, on its face, is a generic letter that did *not* reference any issues, concerns, qualms or problems related to the hazard insurance payment, and PLS properly responded to the First QWR." (Doc. #12, PAGEID 550 (emphasis in original)). Moreover, PennyMac asserts, Plaintiff's allegations of wrongdoing are conclusory, and his allegations of "damages are not causally connected to purported RESPA violations." (Doc. #12, PAGEID 550). PennyMac notes that a

3

loan servicer's response is proper under RESPA so long as it "fairly meet[s] the substance of the QWR." (Doc. #12, PAGEID 558 (internal quotation marks omitted), quoting 12 C.F.R. § 1024.36(f)(iv); *Marais v. Chase Home Fin., LLC*, 24 F. Supp. 3d 712, 725 (S.D. Ohio 2014) (Smith, J.); citing 12 U.S.C. § 2605(e)(2)(A-C)). It argues that Plaintiff, in the First QWR, only disputed "the amount due, principal owed, deferred interest, the loan due date, and the escrow account balance" (*id.* (internal quotation marks omitted), quoting First QWR, Doc. #1-1, PAGEID 36), and that PennyMac provided all of that information in response. (*Id.* at PAGEID 559, quoting First QWR Response, Doc. #8-6, PAGEID 120). As the "First QWR did not mention any issues with Plaintiff's hazard insurance . . . , PLS was under no obligation to answer a question that was never posed." (*Id.*).

As to Claim One, PennyMac also asserts that it cannot be held liable under 12 C.F.R. § 1024.35(a, b) ("Regulation X") for failing to address the "noted errors" in Plaintiff's QWR. (Doc. #12, PAGEID 559, citing Doc. #1, PAGEID 9, ¶¶ 64-65). While PennyMac acknowledges that a loan servicer must investigate an allegation of error upon receipt of the borrower's Notice of Error ("NOE" or "Notice"), it claims that it need not do so if the Notice is: (1) duplicative of a previous notice; (2) overbroad; or (3) untimely. (*Id.* at PAGEID 560, citing 12 C.F.R. § 1024.35(a), (e)(1)(i)(A-B), (g)(1)(i-iii)). Here, PennyMac argues, the First QWR referenced only "the amount due, principal owed, deferred interest, the loan due date, and the escrow account balance"; as PennyMac provided information regarding those topics, it complied with the QWR, and judgment is appropriate even at this early

4

stage. (*Id.* at PAGEID 560-61, citing *Blair v. PNC Bank N.A.*, No. 21-cv-766, 2022 WL 2986868, *6 (S.D. Ohio July 28, 2022) (Black, J.).; *Aazami v. Wells Fargo Bank, N.A.*, No. 17-cv-01564, 2019 WL 281286, *14-15 (D. Or. Jan. 22, 2019)). PennyMac notes that the First QWR did not mention hazard insurance, or any other topic with such reasonable specificity that PennyMac was required to provide information, and PennyMac also informed Plaintiff why it was not providing other documentation. Thus, PennyMac claims that its "response to the QWR was appropriate and sufficient as a matter of law." (*Id.* at PAGEID 562-63, citing *Hittle v. Res. Funding Corp.*, No. 13-cv-353, 2014 WL 3845802, *9 (S.D. Ohio Aug. 5, 2014) (Smith, J.); Doc. #8-6, PAGEID 121).

Further, PennyMac claims that, even if the Court were to construe the First QWR as a request for information ("RFI" or "Request"), PennyMac fully complied with its obligation to respond to Plaintiff's Request to the extent that it was not overbroad or unduly burdensome. (Doc. #12, PAGEID 563-64, citing 12 C.F.R. § 1024.36(f)(1)). Specifically, PennyMac states that it provided every relevant document concerning Plaintiff's mortgage in response to Plaintiff's request for his "Servicing File[,]" meaning that, as a matter of law, it complied with 12 C.F.R. § 1024.36. (Doc. #12, PAGEID 564, citing Doc. #1-1, PAGEID 36-37; Doc. #8-6). Finally, PennyMac argues that Plaintiff failed to allege a causal connection between the responses to the QWRs and any pecuniary damages he supposedly suffered. (Doc. #12, PAGEID 564-65, quoting *Malcolm v. Seterus, Inc.*, No. 5:18-cv-1937, 2020 WL 1434496, *5 (N.D. Ohio Mar. 24, 2020); citing *Martini v. JPMorgan*

*Chase Bank, N.A.*, 634 F. App'x 159, 164 (6th Cir. 2015); *Ford v. New Century Mortg. Corp.*, 797 F. Supp. 2d 862, 870-71 (N.D. Ohio 2011)). Moreover, Plaintiff failed to allege facts supporting a causal connection between the first QWR and any emotional distress that he suffered. (*Id.* at PAGEID 566, citing *Tsakanikas v. JP Morgan Chase Bank*, No. 2:11-cv-0888, 2012 WL 6042836, *2, 4 (S.D. Ohio Dec. 4, 2012), *appeal dismissed at* No. 13-3002 (6th Cir. Sept. 27, 2013)). Also, PennyMac argue that Plaintiff may not recover for any expenses associated with sending the Second QWR, as "the overly broad and vague nature of the First QWR – and the purported need to send the Second QWR – is attributable to Plaintiff, not PLS. Accordingly, the Court should dismiss Plaintiff's First Count with prejudice." (*Id.* at PAGEID 567).

As to Claim Two, PennyMac claims that the undisputed records show that it made proper payments pursuant to the escrow agreement, and thus, it complied with the Prompt Payment Rule. PennyMac further claims that several of the other provisions cited by Plaintiff in Claim Two do not afford a private right of action. (Doc. #12, PAGEID 550-51). Specifically, PennyMac asserts that it made timely payments with respect to both invoices issued by Hippo, only canceling the first payment after it received the second invoice. PennyMac further asserts that it put the FPI in place retroactive to the date of Hippo's cancelation, ensuring no lapse in coverage. PennyMac argues that its actions were reasonable and that, absent any plausible allegation of untimely payment, a claim under 12 U.S.C. § 2605(g) fails as a matter of law. (*Id.* at PAGEID 567-69, quoting *United Food & Com. Workers*

6

*Union-Emp. Pension Fund v. Rubber Assocs., Inc.*, 812 F.3d 521, 524 (6th Cir. 2016); *Hyderi v. Wash. Mut. Bank, FA*, 235 F.R.D. 390, 399 (N.D. Ill. 2006)). Moreover, as Plaintiff was more than thirty days delinquent on the Mortgage Loan at the time the insurance payment was due, he cannot meet an essential element of a 12 U.S.C. § 2605(g) claim (mortgagor must be less than thirty days delinquent on payments), meaning that any failure PennyMac to pay the correct Hippo premium is not actionable. (*Id.* at PAGEID 569-70, citing Notice of Default, Doc. #8-6, PAGEID 267, 273). Finally, to the extent Claim Two seeks relief for purported violations of 12 C.F.R. §§ 1024.17(k)(1)(5) and 1024.34(a), district courts have consistently held that there is not a private right of action under either provision. (*Id.* at PAGEID 570 (collecting cases). Consequently, PennyMac argues, "[Claim] Two fails as a matter of law." (*Id.* at PAGEID 571).

As to Claim Three, PennyMac argues that Plaintiff has failed to allege any specific portion of the Mortgage or Note that PennyMac breached, and that the United States Court of Appeals for the Sixth Circuit has consistently held that barebones allegations of the existence of a contract and breach thereof are insufficient to sustain a claim. (Doc. #12, PAGEID 571, quoting *Northampton Rest. Group., Inc. v. FirstMerit Bank, N.A.*, 492 F. App'x 518, 522 (6th Cir. 2012); *Doe v. BMG Sports, LLC*, 584 F. Supp. 3d 497, 508 (S.D. Ohio 2022) (Cole, J.)). Moreover, PennyMac argues that Plaintiff's breach of the Mortgage and Note, by failing to make his required payment on or before August 1, 2021, discharged PennyMac from further obligations under those instruments;

7

accordingly, any failure by PennyMac to perform under the terms of the Mortgage or Note is not actionable, because PennyMac owed no duty under the Mortgage and Note at the time of its alleged breach. (*Id.* at PAGEID 572, citing *Jackson v. State Farm Fire & Cas. Co.*, 461 F. App'x 422, 426 (6th Cir. 2012); *Brakefire, Inc. v. Overbeck*, 144 Ohio Misc. 2d 35, 2007-Ohio-6464, ¶ 44 (Clermont C.P. Aug. 13, 2007); *CosmetiCredit, LLC v. World Fin. Network Nat'l Bank*, 2014-Ohio-5301, ¶ 26, 24 N.E.3d 762 (10th Dist. 2014)). Consequently, PennyMac asserts, Claim Three must be dismissed. (*Id.* at PAGEID 572-73).

In his memorandum *contra*, as to Claim One, Plaintiff argues that he made the First QWR in July 2023, after PennyMac put the FPI on the Property, which increased his monthly payments. (Memo. in Opp., Doc. #14, PAGEID 1614, citing Doc. #1, PAGEID 5, ¶ 32; Doc. #1-1, PAGEID 36). In the First QWR, Plaintiff furnished PennyMac with an NOE and an RFI, asking that PennyMac provide:

> a. All documents from January of 2021 to the present related to the Mortgage Loan, including but limited to all agreements, offers, internal notes, emails, and communications regarding the same;
>
> b. The current physical location of the Note;
>
> c. A copy of the security instrument that establishes the lien securing the Mortgage Loan;
>
> d. All telephone call logs, recording, and servicer notes regarding communications with Mr. Smith from March of 2021 to present;
>
> e. All correspondence provided to Mr. Smith from January of 2021 to present;
>
> f. A full accounting of all fees charged to Mr. Smith's account, including when each fee was charged, the nature of each fee charged, and why each fee was charged; and

8

g. A key to identify the credits, fees and charges to Mr. Smith's account.

(*Id.*, quoting Doc. #1, PAGEID 5-6, ¶ 36; citing Doc. #1-1, PAGEID 36).

Plaintiff asserts that PennyMac failed to explain: the decision to drop the Hippo policy, the process it undertook to correct information on his account, or why the fees and charges on his account were correct. (Doc. #14, PAGEID 1614-15). Plaintiff also claims that PennyMac failed to produce all documents requested by Plaintiff. (*Id.* at PAGEID 1615). He argues that this failure caused him to send a Second QWR, and he claims that PennyMac's response contained several items requested in, but not provided in response to, the First QWR. Thus, Plaintiff claims, PennyMac's First QWR response was incomplete and violative of RESPA. (*Id.* at PAGEID 1615-17, citing 12 U.S.C. § 2605(e); 12 C.F.R. § 1024.35-36).

Plaintiff also asserts that PennyMac violated RESPA by not responding to the Notice in the First QWR; specifically, PennyMac failed to "advise that it reviewed anything in the service file to determine that the escrow balance was correct. Rather, PennyMac claims that it properly responded to these noted errors simply by providing a payoff quote." (Doc. #14, PAGEID 1619, citing 12 C.F.R. § 1024.35(e)(1); Doc. #12, PAGEID 561). Finally, Plaintiff argues that the damages he pleaded—including the costs incurred in sending the two QWRs, emotional distress, and attorney fees—are recoverable in a RESPA claim, and thus the Rule 12(c) Motion is baseless. (*Id.* at PAGEID 1620-21, citing 12 U.S.C. § 2605(f)(1, 3); *Lanton v. Ocwen Loan Serv'g, LLC*, 793 F. App'x 398, 401-02 (6th Cir. 2019);

9

*Marais v. Chase Home Fin., LLC*, 24 F.Supp.3d 712, 727 (S.D. Ohio 2014) (Smith, J.)).

As to Claim Two, Plaintiff argues that he has adequately pleaded all elements of a 12 U.S.C. § 2605(g) "Prompt Payment Rule" claim. (Doc. #14, PAGEID 1621-22, citing 12 U.S.C. § 2605(g); *Webb v. Chase Manhattan Mortg. Corp.*, No. 2:05-cv-548, 2008 WL 2230696, *16 (S.D. Ohio May 28, 2008) (Smith, J.)). Plaintiff claims that he plausibly alleges that, at the time his Hippo premium was due, he had entered into a forbearance agreement with PennyMac. Because of that agreement, Plaintiff asserts, his Mortgage payments were not delinquent. (*Id.* at PAGED 1622, citing Ex. F to Answer, Doc. #8-6, PAGEID 228, 231, 293). "Even if the August 1, 2022 [*sic*], payment was not made, this payment was not more than 30 days past due at the time Mr. Smith entered into the COVID forbearance plan on August 23, 2022 [*sic*]." (*Id.* at PAGEID 1622-23). Plaintiff argues that the pleadings :

> [E]stablish that Defendant sent the wrong Hazard Insurance Premium payment and was advised by Hippo that the policy was going to be cancelled. Defendant then did not attempt to contact Hippo until the day the policy was set to expire, Defendant failed to confirm if the premium was paid or if the policy was cancelled, and then Defendant decided to take no further action.

(*Id.* at PAGEID 1624). In other words, Plaintiff claims, PennyMac's argument hinges on whether its actions and inactions were reasonable, a question of fact that may not be resolved at the Rule 12(c) stage. (*Id.*).

10

PennyMac responds that the First QWR was a "shotgun" letter with a multitude of overly generic requests, and that PennyMac's response—providing all documents whose requests were discernible and specifying why it could not provide other documents—was sufficient as a matter of law. (Reply, Doc. #15, PAGEID 1631-33, citing 12 U.S.C. § 2605(e)(2); 12 C.F.R. § 1024.36; *O'Connor v. Nantucket Bank*, 992 F. Supp. 2d 24, 29, 34, 37 (D. Mass. 2014)). PennyMac also argues that the NOE contained within the First QWR was so broad as to excuse PennyMac from responding. (*Id.* at PAGEID 1633-34, citing 12 C.F.R. § 1024.35(a), (e)(1), (g)(1)(ii)). Indeed, PennyMac asserts, at no point has Plaintiff "point[ed] to what should have been investigated[,]" and vague, conclusory allegations about invalid responses are insufficient for a RESPA claim. (*Id.* at PAGEID 1634). Finally, PennyMac claims that Plaintiff's damages allegations are unavailing, as Plaintiff has not shown "how his purported damages are related to [PennyMac's] First Response to the First QWR[,]" and "the Second QWR [being] duplicative of his prior correspondence[,]" making PennyMac's response proper. (Doc. #15, PAGEID 1634-35). For these reasons, PennyMac argues, Claim One should be dismissed. (*Id.* at PAGEID 1635).

PennyMac asserts that Claim Two fails because Plaintiff concedes that he was not less than thirty-one days delinquent on his Mortgage payments, and thus, cannot satisfy an essential element. (Doc. #15, PAGEID 1635-36, citing Doc. #8-6, PAGEID 293-94). Moreover, "Plaintiff does not allege, nor do the exhibits to the pleadings show, that Plaintiff cured the past due amount *before* the insurance

11

payment was due in January 2022. Accordingly, the Complaint fails to satisfy the elements for a claim for violation of the Prompt Payment Rule under 12 U.S.C. § 2605." (*Id.* (emphasis in original)). Moreover, PennyMac *did* obtain insurance for the Property, and there is no allegation that Hippo's "denial of coverage was due to any gap in coverage or non-payment of premium." (*Id.* at PAGEID 1637, citing Doc. #12-5, PAGEID 1064-71). Thus, PennyMac asserts, Plaintiff has failed to allege a causal connection between any failure to pay promptly by PennyMac and damage suffered by Plaintiff. Consequently, PennyMac concludes, there is no basis for a Prompt Payment Rule claim, and the Court should dismiss Claim Two. (*Id.*).

Finally, as to Claim Three, PennyMac reiterates that Plaintiff has no colorable breach of contract claim, because Plaintiff breached the Mortgage first. (Doc. #15, PAGEID 1637-38).[1]

### B. Motion to Strike

Plaintiff asserts that:

> The Declarations were not attached to the pleadings in this matter, nor were the Declarations referenced in any way by either party in the pleadings. The Declarations furthermore are not public records, nor are they matters of which this court may take judicial notice. Rather, the Declarations attempt to introduce testimony regarding the

---

[1] PennyMac also argues that to the extent any of Plaintiff's claims arise out of PennyMac's alleged violations of 12 U.S.C. § 2605(e)(2), (f)(1)(B), or 12 C.F.R. § 1024.26(d), or to the extent Plaintiff seeks punitive damages, those arguments must fail, because Plaintiff abandoned them by not addressing them in his memorandum *contra*, despite PennyMac contesting them in its Motion. (*Id* at PAGEID 1638-39, citing *Doe v. Bredesen*, 507 F.3d 998, 1007-08 (6th Cir. 2007)). While PennyMac has accurately stated the governing law, the Court is able to resolve all claims subject to the Rule 12(c) Motion without addressing the argument.

allegations in the Complaint and the Answer, and the Declarations
attempt to explain the records that were attached to the pleadings.
As such, the Declarations are not properly before the Court in ruling
on Defendant's Motion and must be stricken.

(Doc. #14, PAGEID 1611). In the alternative, Plaintiff argues that the Rule 12(c)

Motion must be converted to a motion for summary judgment. (*Id.* at PAGEID

1611-12, quoting FED.R.CIV.P. 12(d); citing *Bates v. Green Farms Condo. Ass'n*,

958 F.3d 470, 483-84 (6th Cir. 2020)).

PennyMac argues that the Declarations are not part of the pleadings, and

thus, not subject to Rule 12(f). (Doc. #15, PAGEID 1639, citing *Wimberly v. Clark

Controller Co.*, 364 F.2d 225, 227 (6th Cir. 1966)). Additionally, PennyMac

claims, the contents of the Declarations are not being offered as evidence outside

the pleadings; rather, they "were submitted merely to authenticate the same

exhibits that were attached to the pleadings, nothing more." (*Id.*). Thus,

PennyMac asserts, the Court should not strike the Declarations or convert the Rule

12(c) Motion to one for summary judgment. (*Id.* at PAGEID 1640).

The Motions are ripe for decision.

## II.    Legal Standards

### A.    Rule 12(c) Motion

"A motion for judgment on the pleadings under Federal Rule of Civil Procedure

12(c) generally follows the same rules as a motion to dismiss the complaint under

Rule 12(b)(6)." *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480 (6th Cir.

2020). Federal Rule of Civil Procedure 8(a) provides that a complaint must contain

13

"a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 12(c), like Rule 12(b)(6), allows a party to move for dismissal of a complaint on the basis that it "fail[s] to state a claim upon which relief can be granted." FED.R.CIV.P. 12(c). The moving party "has the burden of showing that the [opposing party] has failed to adequately state a claim for relief." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007), citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991). The purpose of a Rule 12(b)(6) motion to dismiss "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In ruling on the motion, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its [well-pleaded] allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Treesh*, 487 F.3d at 476.

Nevertheless, to survive a Rule 12(c) motion, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Unless the facts alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Id*. Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. "Rule 8 . . . does not

14

unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79. Legal conclusions "must be supported by well-pleaded factual allegations" that "plausibly give rise to an entitlement of relief." *Id.* at 679.

### B.   Rule 12 Materials Considered and Motion to Strike

The purpose of a Rule 12(c) motion, like its Rule 12(b)(6) counterpart, is to test the legal sufficiency and factual plausibility of the complaint through the entire pleadings, "which consist of the complaint, the answer, and any written instruments attached as exhibits." *Waters v. Drake*, 105 F. Supp. 3d 780, 788 (S.D. Ohio 2015) (Graham, J.). The Court may also consider "matters of public record, orders, items appearing in the record," *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008), and "exhibits attached to a motion for judgment on the pleadings[,] 'so long as they are referred to in the Complaint and central to the claims contained therein.'" *Waters*, 105 F. Supp. 3d at 789, quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). If, however, matters that are outside the pleadings and do not fall within the exceptions above "are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." FED.R.CIV.P. 12(d).

On its own or on motion from a party, "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or

15

scandalous matter." FED.R.CIV.P. 12(f).  "The function of the motion is to 'avoid

the expenditure of time and money that must arise from litigating spurious issues

by dispensing with' them early in the case."  *Operating Eng'rs Local 324 Health*

*Care Plan v. G&W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015), quoting

*Kennedy v. City of Cleveland*, 797 F.2d 297, 305 (6th Cir. 1986); *see also Reid v.*

*Baker*, 499 F. App'x 520, 524 (6th Cir. 2012) (affirming trial court's denial of

"Plaintiff's Motion to Strike Defendants' Exhibits [to their motion to dismiss]

because Federal Rule of Civil Procedure 12(f) only permits the court strike

pleadings, and an exhibit is not a pleading.").  However, "[m]otions to strike are

viewed with disfavor and are not frequently granted."  *Id.*, citing *Brown &*

*Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953).

## III.  Analysis

### A.  Motion to Strike

Plaintiff claims that the Declarations are neither part of the pleadings nor

matters that the Court may consider as part of a Rule 12(c) motion.  Rather, "the

Declarations attempt to introduce testimony regarding the allegations in the

Complaint and the Answer, and the Declarations attempt to explain the records

that were attached to the pleadings."  (Doc. #14, PAGEID 1611).  If, as Plaintiff

argues, the Declarations are not part of the pleadings, then they cannot be subject

to a Rule 12(f) motion, making the Motion to Strike procedurally inappropriate.

*Reid*, 499 F. App'x at 524.  However, if they are properly part of the pleadings,

then the Court may consider them in adjudicating the Rule 12(c) Motion without

16

converting it to one for summary judgment, thereby making the Motion to Strike substantively inappropriate.  As there is no basis for the Motion to Strike, it is overruled.

### B.  Rule 12(c) Motion

#### 1.  Claim One

PennyMac asserts that the First QWR was insufficient to put it on notice of what it needed to correct or the information it needed to provide to Plaintiff aside from "the amount due, principal owed, deferred interest, the loan due date, and the escrow account balance." (Doc. #12, PAGEID 558, quoting Doc. #1-1, PAGEID 36).  PennyMac argues that it fairly responded by providing that information, including a payoff demand statement, and that any additional information, such as about any non-payment of property insurance, was not requested with sufficient specificity to require a response from PennyMac. (*Id.* at PAGEID 559, citing Doc. #8-6, PAGEID 120-21, 123).  Plaintiff counters that PennyMac failed to produce, among other items, documents related to his participation in a mortgage payment forbearance plan, despite asking for all documents relating to the Mortgage in the First QWR. (Doc. #14, PAGEID 1618, citing Doc. #1, PAGEID 5-6, ¶ 36).

As Plaintiff points out, PennyMac produced certain documents in response to the Second QWR that were listed in the First QWR (Doc. #14, PAGEID 1618); from that, a reasonable trier of fact could infer that PennyMac did not fully comply with its RESPA obligations with respect to the First QWR.  Moreover, the Court

must determine whether the Second QWR necessitated a response by PennyMac beyond PennyMac simply reproducing an April 21, 2023, letter that it had previously sent to Plaintiff. (Doc. #8-8, PAGEID 342-48). In sum, the sufficiency of PennyMac's response to the First QWR is a fact-sensitive determination, and factual considerations underpin the issue of law of whether PennyMac had a duty to respond differently to the Second QWR. These determinations cannot and should not be made solely on the basis of the pleadings. Finally, Plaintiff has plausibly alleged damages in legally allowable categories. (Doc. #1, PAGEID 8, ¶¶ 55-57). Consequently, PennyMac's Rule 12(c) Motion is overruled as to Claim One.

### 2. Claim Two

To survive a Rule 12 Motion as to a Prompt Payment Rule claim:

> [A] plaintiff must [plausibly allege] at least the following: (1) the borrower had a federally related mortgage loan; (2) the terms of the loan agreement require the borrower to make payments to an escrow account; (3) the borrower owed taxes or premiums that were to be paid out of the escrow accounts; (4) the servicer failed to make such payments in a timely manner, *i.e.* before the deadline to avoid a penalty and before the payment was 30 days overdue; and (5) at the time the premium payment was due, the borrower was not more than 30 days delinquent in making mortgage payments.

*Hyderi*, 235 F.R.D. at 399.

PennyMac does not dispute that Plaintiff has plausibly alleged elements one through three. As to the fourth element, PennyMac argues that its payments were timely. (Doc. #12, PAGEID 568-69, quoting *Webb*, 2008 WL 2230696, *16). However, the Court need not examine that argument, because the pleadings

demonstrate that Plaintiff cannot satisfy the fifth element: that "at the time the premium payment was due, the borrower was not more than 30 days delinquent in making mortgage payments." (Doc. #12, PAGEID 568, 569-70, quoting *Hyderi*, 235 F.R.D. at 399). It is undisputed that Plaintiff failed to make the required payment on August 1, 2021, more than five months prior to PennyMac's scheduled insurance premium payment. (Doc. #8-6, PAGEID 293). PennyMac's correspondence showed the missed August 2021 payment as an "overdue payment*." (Id.)*. The forbearance plan stated in relevant part: "You have been approved for a Forbearance Plan, which temporarily allows you to stop making regular mortgage payments for an agreed period of time. Late fees and other fees that must be waived as a term of your Forbearance Plan may be reflected on this month's statement, but they will not be charged to your account." (*Id*. at PAGEID 294). In the forbearance agreement, PennyMac did not forgive the overdue payment or state that Plaintiff is no longer delinquent on the Mortgage, meaning that it remained in place. *See In re Bell*, 386 B.R. 282, 290 (W.D. Wash. 2008) (default remains unless the forbearance agreement expressly excuses default). Thus, to the extent that Claim Two arises under the Prompt Payment Rule, it must be dismissed.

Finally, PennyMac argues that Claim Two fails as a matter of law to the extent that it is raised under 12 C.F.R. § 1024.34 or 12 C.F.R. § 1024.17(k). (Doc. #12, PAGEID 570). Several courts, including multiple district courts within the Sixth Circuit, have held that there is no private right of action for violations of

12 C.F.R. § 1024.34. *See Burns v. Ditech Fin., LLC*, No. 3:19-cv-814, 2021 WL 6108420, *5 (W.D. Ky. Mar. 5, 2021) (collecting cases); *Carter v. CrossCountry Mortg., Inc.*, No. 18-12714, 2019 WL 3958275, *5 (E.D. Mich. Aug. 21, 2019). The *Carter* court also held that there is not a private right of action for violations of 12 C.F.R. § 1024.17. 2019 WL 3958275, *5. Plaintiff cites no caselaw, and the Court is unaware of any, in which courts reached the contrary conclusion. Consequently, those sub-claims are barred as matters of law, and Claim Two must be dismissed in its entirety.

### 3.  Claim Three

PennyMac notes that the doctrine of "first material breach" applies in Ohio law, whereby a party's breach discharges the non-breachinig party from future obligations under the contract. (Doc. #12, PAGEID 572, citing *CosmetiCredit, LLC v. World Fin. Network Nat'l Bank*, 2014-Ohio-5301, ¶ 26, 24 N.E.3d 762 (10th Dist.)). PennyMac argues that, by failing to make his August 2021 payment, Plaintiff materially breached his obligations under the Note and Mortgage and discharged PennyMac from future performance. Thus, PennyMac asserts that it was under no duty to make timely payments to Hippo, and any failure to do so cannot form the basis for a breach of contract claim. (*Id*. at PAGEID 572-73, citing Doc. #1-1, PAGEID 13, ¶ 3, PAGEID 23, ¶ 1). Plaintiff argues that PennyMac allowing him to enter into a forbearance plan means that Plaintiff's "lack of payment does not conclusively establish that he was in breach of the Mortgage.

20

Rather, by allowing Mr. Smith to enter into the forbearance plan, Defendant consented to Mr. Smith withholding payment."  (Doc. #14, PAGEID 1625).

Plaintiff does not dispute that: (a) his failure to make timely payments on the Mortgage constituted a material breach (Doc. #1-1, PAGEID 13, 14, ¶¶ 1, 3, 6(B), PAGEID 23, ¶ 1), and that (b) under Ohio law, his breach would normally discharge PennyMac from any further obligations under the Note and Mortgage, including the need to make timely hazard insurance premium payments.  The Mortgage, like any contract, is generally subject to equitable concerns such as waiver or estoppel. *See, e.g.*, *First Fed. Sav. & Loan Ass'n of Toledo v. Perry's Landing, Inc.*, 11 Ohio App. 3d 135, 143, 144, 463 N.E.2d 636 (6th Dist. 1983) (emphasis in original) ("the enforcement of due-on-sale clauses, as with other contract provisions, is subject to traditional contract defenses, including *equitable defenses*. . . . Equitable estoppel, if shown, will prevent the enforcement of a valid mortgage contract or provision thereof[.]").  In this case, however, the Mortgage expressly stated that: "Any forbearance by Lender in exercising any right or remedy . . . *shall not* be a waiver of or preclude the exercise of any right or remedy."  (Doc. #1-1, PAGEID 28, ¶ 11 (emphasis added)).  Moreover, Plaintiff, in Claim Three, does not allege detrimental reliance or otherwise advance an estoppel theory.  Thus, Claim Three is foreclosed as a matter of Ohio law, and must be dismissed.

### 4.    Dismissal Without Prejudice

While Claims Two and Three, as pleaded, do not give rise to plausible claims for relief, *Twombly*, 550 U.S. at 570, the Court cannot conclude that *any* properly

pleaded contract claim would not survive a renewed Rule 12 motion, such that amendment would be futile. *Rose v. Hartford Underwriters Ins.*, 203 F.3d 417, 420 (6th Cir. 2000). Accordingly, Claims Two and Three are dismissed without prejudice to refiling within twenty-eight (28) days of entry.

## IV. Conclusion

In light of the above, Plaintiff's Motion to Strike (Doc. #14) is OVERRULED. PennyMac's Rule 12(c) Motion (Doc. #12) is OVERRULED as to Claim One and SUSTAINED as to Claims Two and Three, which are DISMISSED WITHOUT PREJUDICE to refiling within twenty-eight (28) days of entry.

IT IS SO ORDERED.

February 11, 2025

WALTER H. RICE, JUDGE
UNITED STATES DISTRICT COURT